Benson, J.
In a case, otherwise properly cognizable in a court of law, if the plaintiff for want of a writing, the evidence of his right, is obliged to sue in equity, it is a rule there, that he must verify on oath.the allegation that the writing is lost, or in the possession of the defendants. This rule is founded on the same reason as the rule in courts of law, in cases of pleas to the jurisdiction, foreign pleas, and claims of cognizance, and is intended only, to prevent a change or transfer of jurisdiction, without due cause shown, arising from facts proved on oath, and does not diminish or deprive the defendant of any real advantage of defence ; so that proof, not absolutely positive arid conclusive, but less precise and full, will be sufficient. In order to confine the rule to its mere object, if the bill is for discovery only, or if it is for a general discovery of all writings in the possession of the defendant, (Neis. 78; 1 Tern. 180; id. 247; 2 P. Wms. 541; 3 Atk. 132 ; 1 Ves. 345 ;) whatsoever they may be, it is to be supposed that the plaintiff hath no particular knowledge of them, but yet that some writings of some kind in which he is interested and relative to the property he seeks to recover, do exist, and are in the possession of the defendant, (Prec. in Chan. 536,) in these cases the allegation of the loss of the papers, or that they are in the possession of the defendant, need not be on oath. Until some decisions in England within ten years past, (2 Brown’s Chan. Rep. 280 • *506 Id. 319 ; 4 Brown’s Chan. Rep. 480;) it has always been held, as it is expressed in the books, that “ a demurrer being bad in part, must be overruled,” for it is not like a plea, which may be allowed in part, but a demurrer void in part, is void in h)ío,íand cannot be separated.” (1 Atk. 450. 2 'Atk. 389.) “ A general demurrer to the whole bill, if there is any part of the bill to which the defendant ought to put in an answer, the demurrer being entire, must be overruled (1 Ves. 248;) a demurrer, if defective in part, is bad [*424] for the 'whole, *for it cannot be split. Although the decisions of the English courts are deservedly of great authority, yet the reasons in the cases alluded to, the supposed hardship on a defendant, if he cannot avoid the expense of taking a copy of a long bill, if there chances to be a right to a discovery ; thereby making the only question to be, whether the plaintiff should be put to the expense of a new bill, or the defendant of a new demurrer, are not convincing; for if the defendant, instead of a general demurrer to the whole bill, will demur particularly to each separate or distinct part or matter, to which he may suppose, “ he ought not to put in an answer,” the demurrer may be overruled as to some parts or matters, and, allowed as tó others, and the defendant, among other costs, may be decreed the expense of so much of the copy of the bill to which-the demurrer was allowed, so that there will not, in that respect be any hardship on him. It may be also stated, that other means, within the powers of the court, to correct the mischief, if it prevails, of filing bills of an undue length, containing matters which the defendant ought not to answer, may easily be devised, preferable to merely turning the plaintiff round, and subjecting him to the delay and expense of a new bill. My conclusion, therefore, is, that there does not appear sufficient reason to change an established and approved practice, and consequently, if there are any matters in the bill to which the defendants ought to have put in an answer, the demurrer being general, and to the whole bill, it must be overruled in the whole. This leads to an examination of the. several causes of demurrer.
*507 First; The defendants object to the proof as arising from the affidavit of the complainant, Boon. 1. That there is only the oath of one, whereas there ought to be an oath by each of the complainants. 2. That the oath ought not only to state the destruction of the supposed writings, but also that the deponents have them not in their own possession ; and, 3. That the deponent doth not swear from his own knowledge, but from the information of others. Here I state that the proof of the *allegatjon of the [*425] loss of the writing, is restricted to the oath of the party, in exclusion of the oath of a stranger, and, therefore, if the circumstances of the case are such, as that it is to be presumed the party cannot know the facts from his own knowledge, he must then, from necessity, be admitted to testify from credible information, or, in other words, from the hearsay of others. Whenever the law admits hearsay testimony, the fact is thereby as competently proved and established, as if the person giving testimony was to testify from his own knowledge. And whenever a person swears from the credible information of others, it not only implies that he hath inquired to an extent, and in a manner to produce a rational belief, that the fact is as he testifies it to be, but it also excludes the supposition, that he hath any reason even to suspect it to be otherwise. A distinction is to be taken between the cases where the writing is so lost only, as that it cannot for the present, be found, and is supposed still to exist, and the cases where the writing is wholly destroyed, and therefore supposed not to exist. Though in some of the former cases, it may be proper, in order to guard against evasion, to require the party to swear, also, that he hath not himself the writing in his possession, yet in the latter cases, it would be altogether a useless accumulation of proof; for it would be to require proof of another proposition of fact, which follows as a necessary logical consequence from one already proved. Assuming it, therefore, and which I think cannot be questioned, that the present case is one of those in which proof, from the information or hearsay of others, is to be received, then the fact of the de *508 sUuctiotl of the supposed conveyances from the original patentees to. Sir William Johnson, is duly and competently proven; and, consequently, the affidavit: of the complainant, Boon, alone is sufficient, so that the first cause of demurrer fails.
Second. It must be admitted, that there cannot be a more sound or salutary principle than the one on which [*426] *the second cause of demurrer proceeds, that a court of equity should always withhold its aid and countenance from a suitor, whose conduct appears in any part such ás a conscience rightly informed cannot approve:(a) but this principle is not applicable to the present case. The supposed illegality of the agreement between the original patentees and Sir William Johnson, consists in its being in contravention of the instruction from the king to the governor, restraining the patents for lands to a quantity not exceeding 1000 acres■ to each patentee. The futility of this regulation was soon discerned, and the instruction was for near half a century before the patent mentioned in the bill issued, considered altogether as a dead letter, and the compliance with it a mere matter of form ; but even conceding that the legality of an agreement, similar to the one supposed to have taken place between the patentees and Sir William Johnson, might be made a question ; yet that: could only be the case where the agreement was before the Indian purchase; because, immediately on the purchase, the king in whose name these purchases were always made, became a trustee for the persons to whose use they were made and the trust, possibly on artificially legal principles, might have been limited to a quantity not exceeding the rate of 1000 acres to each person. The several cestui que trusts,, however, had an equitable interest in their respective shares, which they could legally as-, sigiij and agree to vest the title at law in the assignees, on *509 the issuing of the patent; and as it does not appear when the agreement, in the present instance, was made, whether before or after the Indian purchase, the illegality of it cannot come under consideration on the defendant’s demurrer. It was a matter of which they could avail themselves by plea onty, with the requisite averments supplying the uncertainty of the bill, as to the time when the agreement was made.
Third. The answer which has been given to the third cause of demurrer is, that it was not requisite for the defendants, in answering the bill, to declare, either that There was an adverse possession, or if there was, [*427] that the defendants kneiu it; but that it would have been sufficient if they had simply admitted, that their vendors were not, at the time of the purchase by them, the tenants in possession; because, whether the possession was vacant, or whether it was adversely held by others, and if the latter, whether the defendants knew it, whichever might have been the fact, was wholly immaterial. This answer, it must be owned, is far from being Unsatisfactory ; at the same time, the principle that a man is not held to accuse himself, is so estimable, that we cannot be .too cautious in admitting distinctions or qualifications of it; and, therefore, (especially as the discovery sought for in this instance, is of a fact altogether useless in the complainant’s case?) I should have supposed it more safe, if a particular demurrer had been put in to that part of the bill, to have allowed it, and have ordered the allegation and interrogatory, which the demurrer supposes to be exceptionable, to be struck out of the bill.(a)
*510 I shall consider .the three last causes of demurrer toT gether; for I am inclined to think that they might all have been shown under the last general cause of demurrer; they being essentially the same, amounting to a denial that the court ought to grant a relief, supposing all the allegations in the bill to be confessed, which is only, saying, in other words, that there is a want of equity. It is ordinarily premature, wholly to disrhiss- a bill on a demurrer for this general, cause, unless the complainant’s cáse is, from his own showing, radically such, that no discovery or proof can possibly make it a proper subject of equitable jurisdiction. Such was the late case of Munro and, others v. Allaire, (February, 1796,) decided in this court, where the complainant came to have a purchase of lands perfected and confirmed to him, the supposed sale being made by trustees under a will; and he being one of the trustees, did not allege, himself also a cestui que trust, or one of the legatees to whom the money arising from the sale was to be paid, and that- he, although a trustee, was obliged to .pur[*428].. chase *in order to avoid the loss to himself, os a cestui que trust, by a sale at a less price; for¿ it is to be remarked, that a defendant doth not forego, or waive a single advantage as to the merits, or the point whether the complainant has equity, by not demurring. He may equally insist on the same matters, by way of answer, which he might have done by demurrer ; and if he should even ad *511 mit them in the answer, he may still avail himself of them in argument, on the final hearing of the cause.(a)
*512 My opinion, therefore, is, that the bill ought to have been retained, and that the court of chancery should have reserved itself on the question, whether the complainants were entitled to any, or what relief, until all the proofs, arising from the answers of the defendants, or otherwise, had come in ; and consequently, that the several decrees allowing the respective demurrers of the respondents, and dismissing the appellant’s bill, ought, to be reversed. The respondents have not only put in separate demurrers, but they have also proceeded separately to decrees. How far, or by what means, a court of chancery ought to restrain, and regulate the right of defendants to sever in their defence, so as to prevent them from availing themselves of it, solely to vex the complainant, are matters on which I forbear to _give any opinion here, because it is unnecessary. We can only declare and establish what shall be the consequences of an unnecessary severance, if there should afterwards be an appeal, and á judgment of reversal for the complainant. This may, in some measure, prevent the abuse alluded to. My opinion, therefore, is, that each respective respondent, on the *513 present appeal, be decreed to pay to the appellants for their costs on the appeal, a sum to the same amount which would have been decreed to be paid by them all jointlyif they had joined in demurrer in the court below.
14th March, 1798:—The majority of the court, concurring in this opinion, it was thereupon ordered, adjudged and decreed, *that the several decrees of [*429] the court of chancery, allowing the separate demurrers of the respondents respectively to the bill of complaint of the appellants against the respondents, and the other defendants in the bill named, and directing the said bill, as it respected each of the respondents, to be dismissed,, be reversed ; and further, that the respondents severally pay to the appellants, the sum of thirty dollars, for their costs on this appeal, in respect to each respective decree so reversed,, and that the cause be remitted to the court of chancery, and that such further proceedings there be had thereupon, as well for the execution of this judgment, order and decree, as otherwise, as shall be agreeable to equity and justice.
Judgment of reversal.(a)

 He who seeks equity must do equity, 1 Story’s Eq. Jur. 59, (a); Com, Dig. Chan. 3, F. 3; McDonald v. Neilson, 2 Cowp. 139;. for the court will never assist a wrong-doer in effectuating his wrongful and illegal purpose. 1 Story’s Eq. Jur. ut sup. 1 Fonbl. Eq. B. 1, eh. 1, § '3,n. (p). Id. B. l,"ch. 2, 5 13. jifeson y. Gmdiner, 4 Bro. Ch. C.,435.

 “ It is a general rule, that no one is hound to answer, so as to subject himself to punishment, in whatever manner that punishment may arise, or whatever may be the nature of that punishment. If, therefore, a bill requires an answer, which may subject the defendant to any pains or penalties, he may demur to so much of the bill. As, if a bill charges any thing, which, if confessed by the answer, would subject the defendant to any criminal prosecution, or to any particular penalties, as an usurious contract, maintenance, champerty, simony. And in such cases if the defendant is not obliged to answer the facts, he need not answer the circumstances, though they have not such an immediate tendency to criminate.” Mitf. Eq. PI. by Jeremy, 194, *510 195. In McIntyre v. Mancius, 16 Johns. R. 592, 597, Spencer,. Ch. J. lays it down as a fundamental rule, that the "court of chancery “ will not compel a defendant to discover, that which if 'he answers in the affirmative will subject him to punishment, or render hit. infamous, or expose him to a penalty or forfeiture.” Attorney General v. Vincent, Bunb. 192. Fane v. Astee, 1 Eq. Ab. -77. Sir R. Firebrass’ case, Í. Salk. 550. “ And if the bill - require him to answer to .facts of this descript•'. n, he may demur to it successfully.” See Story’s Eq. El. 3d ed. § 575-599 ; :-or the fullest consideration of -this rule and citation, of the cases. See also, - 521, 526. Cooper’s Eq. PI. 204, 206, 207. Beames’ Eq. PI. 258-271. 2 Sory on Eq¿ Jur. § 1494. Chauncey v. Tabourden, 2 Atk. 393. March v. Dawson, 9 Paige; 580. Claridge v. Hoare, 14 Ves. 59. Wallis v. Duke of Poritland, 3 Ves, 494.

o) “ A hill of discovery, properly so called, never prays any relief. If a bill, therefore, which is maintainable in equity solely as a bill for discovery, should contain a prayer for relief also, it will, in England, (although not in America,) be open to a demurrer to the whole bill; and the party will not be allowed to maintain his bill; for the discovery only ; for he is bound to shape his bill, according to what he has a right to pray. Price v. James, 2 Bro. Ch. R. 319. Collis v. Swayne, 4 Bro. Ch. R. 480. Loker v. Rolle, 3 Ves. 4, 7. Hodgkin v. Longden, 8 Ves. 3. Gordon v. Simpkinson, 11 Ves. 509. Muckleston v. Brown, 6 Ves. 3. Todd v. Gee, if Ves. 373. Barker v. Dade, 6 Ves. 686. Mitf. Eq. PI.-by Jeremy, 183,184. Pitts v. Short, 17 Ves. 213. Jones v. Jones, 3 Meriv. 161, 170. Williams v. Steward, 3 Meriv. R. 502; Cooper Eq. PI. 58, 188. Deare v. Attorney General, 1 Y. & Coll. 205, 206. Albretcht v. Sussman, 2 V. & Beam. 328. Monis v. Morgan, 10 Sim. R. 341. The rule formerly adopted in England was different. It was, that if the bill was for discovery and relief, and it was good for dis. covery only, a general demurrer [to the whole bill was bad; for though the party was not entitled to relief, he was not to'be prejudiced for having asked too much. Brandon v. Sands, 2 Ves. jr. 514. Sutton v. Scarborough, 9 Ves. 75. Attorney General v. Brown, 1 Swanst. 294; Mitf. Eq. PI. by Jeremy, 183, 184. In New York, the old English rule' is adhered to ;'and, indeed, it has much to commend it. See Le Roy v. Servis, 1 Cain. Gas. in Err. 1; S. C. 2 Cain. Gas. in Err. 175. Kimberley v. Sells, 4 Johns. Ch. R. 467. Livingston v. Livingston, 4 John. Ch. R. 296. Higginbotham v. Burnet, 5 John Ch. R. 184. The proper course is held, in New York, to be to demurr to the relief, and to answer to the discovery. Higginbotham v. Burnet, 5 John. Ch. R. 184. The same doctrine was affirmed in the supreme court of the United States, in Livingston v. Story, 9 Peters’ R. 632; 658, where Mr. Justice Thompson, in delivering the opinion of the court, said; ‘ And if any part of the bill is good, and entitles the complainant either to relief or discovery, a demurrer to the whole bill cannot be sustained. It is an established and universal rule of pleading in chancery, that a defendant may meet a complainant’s bill by several modes of defence. He may demur, answer, and plead to different parts of a bill. So that if a bill for discovery and relief contains proper matter for the one, and not for the other, the defendant should answer the propér, and demur to the improper matter. But if he demurs to the whole bill, the demurrer must be overruled.’ ” Story on Eq. PI. 3d ed. § 312 and note (1.) See also id. § 306, 441, 546. The defendant may, however, if he chooses, demur to the relief only, and answer as to the discovery sought. Hodgkin v. Longden, 8 Ves. 3; Cooper, Eq. PI. 117. Whitchurch v. Golding, 2 P. Will. 541; S. C. 1 Eq. Abridg. 14. Todd v. Gee, 17 Ves. 273. North v. Strafford, 3 P. Will. 148. “ Where a bill is for discovery and relief, a demurrer to the relief only, if sustained, generally defeats the discovery also; for in such a case, the discovery is inciden tal to the relief *512 Price v. Jumes, 2 Bro. Ch; R. 319. Sutton v. Scarborough, 9 Ves. 71, 75. But there cannot be a demurrer to the discovery only, and not to the relief; for that would be to demur, not to the thing required, (the relief,) but to the means by which it was to be obtained. Morgan v. Harris, 2 Bro. Ch. R. 123. Waring v. Mackreih, Forrest, R. 129; Cooper, Eq. FI. 117 ; Mitf. Eq. PI. by Jeremy, 110, 183-185. Deare v. Attorney General, 1 Y. & Coll. 197, 205, 206. Where the discovery sought is not a mere incident to the relief prayed, if the demurrer be to the latter only, it would seem doubtful, whether the demurrer would not be bad. See Hare on Discov. § 3, p. 6-8 ; Mitf. Eq. PI. by Jeremy, 110, 183,- and notes. Angelí v. Angelí, 1 Sim. 83, 93. In order to prevent the operation of the rule, that a demurrer to the relief, if good, is a bar to any discovery, it was formerly a practice to filé a bill at first for discovery only, and then, after the discovery obtained, by amending the bill, to- try the title to relief. But this practice is now discountenanced, except in cases where it is clear, that the proper relief is to be had in equity ; and then an amendment will be allowed. See Mitf. Eq. PI. by Jeremy, 178, note (n) ; Hare on Discov. 22-24. Butterworth v. Bailey, 15 Ves. 363. Whitworth, v. Davis, 1 Ves. & Beam. 23. Lousada v. Templer, 2 Russ. 564, 565. Severn v. Fletcher, 5 Sim. 457. Frietas v. Don Santos, 1 Y. & Jerv. 577. Jackson v. Strong, 13 Price, 494. Story on Eq. PI. 3d ed. § 312, and note (2).

 This report is taken from a manuscript of Mr. Justice Benson.